UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL JANKANISH and HEATHER JANKANISH, a married couple, DAVID L. MCFERRIN, and PAIGE L. PERISICH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY and FIRST AMERICAN SMS, aka SMS SETTLEMENT SERVICES,<br><br>Defendants. | Case No. C08-1147 MJP<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' motion to dismiss. (Dkt. No. 47.) Having reviewed the motion, Plaintiffs' response (Dkt. No. 59), Defendants' reply (Dkt. No. 60), the parties' submissions of supplemental authority (Dkt. Nos. 67, 70, 72, 73, 74 & 76), and the balance of the record, and having determined that oral argument from the parties is unnecessary, the Court rules as follows: the Court DENIES Defendants' motion to dismiss count one for breach of the escrow contracts, counts seven and eight for breach of fiduciary and agency duty, and count ten for violation of the Washington Consumer Protection Act; the Court GRANTS

ORDER ON MOTION TO DISMISS — 1

Defendants' motion to dismiss count two for breach of the HUD-1 statements, counts three, four, and five for violations of the Real Estate Settlement Procedures Act, count six for unjust enrichment, and count nine for violation of the California Unfair Business Practices Act. The Court's reasoning is set forth below.

**Background**

Plaintiffs Daniel and Heather Jankanish and David McFerrin[1] are Washington state residents who sold or refinanced residential real estate in 2006 and 2007. (Second Amended Complaint ("SAC") ¶¶ 16-17.) Defendant First American Title Insurance Company ("FATIC")[2] served as the escrow agent in each of Plaintiffs' transactions. (Id.) Both FATIC and Defendant First American SMS, Inc. ("SMS") (collectively, "First American") are wholly owned by the First American Corporation. (Id. ¶¶ 21-22.) Plaintiffs' action challenges fees charged by First American during their real estate transactions. They assert claims for breach of contract, violation of the Real Estate Settlement Procedures Act ("RESPA"), unjust enrichment, breach of fiduciary duty, breach of agency duty, violation of California's Unfair Competition Laws, and violation of Washington's Consumer Protection Act ("Washington CPA").

**Analysis**

On a 12(b)(6) motion to dismiss, the Court must assess the legal feasibility of the complaint. Accordingly, the Court accepts Plaintiffs' factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007). To survive, the complaint "does not need detailed factual allegations" but must contain "enough [factual allegations] to raise a right to relief above the speculative level" and to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 127

---

[1] By stipulation of the parties, all claims of former Plaintiff Paige Perisich were dismissed on March 18, 2009.

[2] The SAC also identifies The Talon Group as a division of FATIC. (SAC ¶ 7.) In this order the Court will refer to both FATIC and its division, The Talon Group, as FATIC.

S. Ct. 1955, 1964-65 (2007). When reviewing the motion, the Court may consider documents incorporated by reference into the complaint. Van Buskirk v. CNN, 284 F.3d 977, 980 (9th Cir. 2002).

**I. BREACH OF CONTRACT**

    1. Count One: Escrow Instructions

The parties agree that they entered into express contracts that established Plaintiffs' obligation to pay for and FATIC's obligation to perform escrow services (the "escrow contracts"). (SAC ¶ 179; Defs' Brief at 20.) The terms of the escrow contracts are contained in the Plaintiffs' Escrow Instructions, which are incorporated by reference into Plaintiffs' complaint. (SAC ¶ 179; see Plaintiffs' Escrow Instructions, attached at Dkt. Nos 48-2, 48-3 & 48-4.) Plaintiffs now allege that FATIC breached the escrow contracts "by marking-up and charging reconveyance fees in addition to the escrow fees charged for no additional settlement services[,]" and by failing to disclose that Plaintiffs could use reconveyance services offered by other entities, that reconveyance processing was being performed by a prior lender, and that reconveyance fees purportedly paid to a third-party were in fact retained by FATIC. (SAC ¶¶ 184-87.)

Plaintiffs' first allegation states a valid claim for breach of contract. (See SAC ¶ 184.) The Escrow Instructions specifically direct FATIC "to pay the demand of the appropriate party and record such a document ... [i]f there are underlying encumbrances being paid off which require the obtaining of a ... Reconveyance[.]" (SAC ¶ 181.) This language, construed in Plaintiffs' favor, can be read as a contractual obligation to provide reconveyance services. Additional fees charged for reconveyance services may constitute a breach of these terms. Whether, as Defendants contend, those additional fees were for "reconveyance tracking" instead of "reconveyance processing" is a factual issue that cannot be determined on this motion. At this phase, the Court finds only that Plaintiffs' allegation of additional fees for reconveyance services states a valid claim for breach of the escrow contracts.

However, Plaintiffs' additional allegations in this count cannot survive. To establish a claim for breach of contract, Plaintiffs must allege that Defendants failed to fulfill an obligation created by the terms of the contract. Norm Adver. v. Monroe St. Lumber Co., 25 Wn.2d 391, 398 (Wash. 1946). Yet Plaintiffs do not identify any contractual obligation breached by Defendants' alleged failure to disclose the "reconveyance schemes." Breach of contract claims necessarily rely on the rights and obligations created by the contract's terms, and the escrow contracts contain no terms requiring disclosure. Neither does the implied duty of good faith and fair dealing create obligations in a contract where they do not exist. Badgett v. Sec. State Bank, 116 Wn.2d 563, 569 (Wash. 1991) (finding that the implied duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement"). Because Plaintiffs' disclosure claims do not allege that Defendants breached the contracts at issue, they must be dismissed.

2. Count Two: HUD-1 Settlement Statements

The complaint alleges that Defendants breached the HUD-1 Settlement Statements in each Plaintiff's transaction by failing to make a number of disclosures and a true and accurate account of the funds disbursed. (SAC ¶¶ 193-196.) This count must be dismissed because the settlement statements are not contracts.

In a recent case evaluating similar allegations, this Court held that the HUD-1 settlement statement before it was not a contract because it did not contain the contractual elements required by Washington law. Cornelius v. Fidelity National Title Co., No. C08-754 MJP at 5 (W.D. Wash. filed March 9, 2009) (citing DePhillips v. Zolt Constr. Co., 136 Wn.2d 26, 31 (1998)). As in Cornelius, the current settlement statements do not include terms and conditions, reflect no fee paid as consideration for a separate HUD-1 contract, and contain no contractual promise to perform (or refrain from performing) some act. Id. at 5-6. The Court therefore finds that the HUD-1 statements are not contracts and dismisses count two.

ORDER ON MOTION TO DISMISS — 4

## II. THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

Plaintiffs bring a number of claims for violation of the anti-kickback provisions of RESPA. Section 8(a) of RESPA proscribes giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding . . . incident to or a part of a real estate settlement service . . . referred by any person." 12 U.S.C. § 2607(a). Section 8(b) similarly prohibits the payment of any percentage or division of a charge except for services actually rendered. 12 U.S.C. § 2607(b). Escrow services are "settlement services" under RESPA. See 24 C.F.R. § 3500.2.

### 1. Count Three: Reconveyance Scheme

Private parties must bring claims for RESPA violations within one year from the "date of the occurrence of the violation." 12 U.S.C. § 2614. Barring extenuating circumstances, "[t]he date of the occurrence of the violation is the date on which the loan closed." Bloom v. Martin, 865 F.Supp. 1377, 1386-87 (N.D. Cal. 1994); aff'd, 77 F.3d 318 (9th Cir. 1996). Plaintiffs' closings occurred more than one year before the filling of their complaint on May 14, 2008. (See SAC ¶¶ 67, 71-75, 84, 88-93, 108, 112-15.) Nonetheless, Plaintiffs contend that they have adequately plead equitable estoppel and equitable tolling of the statute of limitations and their RESPA claims should not be dismissed as time-barred.

Count three (the reconveyance scheme claim) alleges that Defendants: (1) charged reconveyance fees when no service was performed or was performed by the prior lender (SAC ¶¶ 203-04); (2) charged a "marked-up" reconveyance tracking fee (SAC ¶ 201); received payments for "multiple services" not distinct from the primary services provided (SAC ¶ 202); and failed to disclose that "Northwest Post Closing Center" is the same company as FATIC and Plaintiffs were not required to use the company for settlement services (SAC ¶ 205).[3] These claims must

---

[3] In count three, Plaintiffs also include allegations that FATIC improperly referred reconveyance business to SMS, which the Court will address in its discussion of count four. (Compare SAC ¶¶ 199-200 with ¶¶ 210-11.)

be dismissed as time-barred because the entirety of Plaintiffs' allegations do not justify application of equitable estoppel or equitable tolling.

Equitable estoppel requires an allegation of "active conduct by a defendant above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000). Plaintiffs' underlying allegation of wrongdoing is that Defendants collected fees for reconveyance services without performing the reconveyances. (Pls' Resp. at 25.) Equitable estoppel can apply only if the complaint alleges that Defendants actively engaged in additional conduct intended to prevent Plaintiffs from discovering the alleged wrongdoing within a year of their closings.

In support of equitable estoppel, Plaintiffs rely on allegations that First American concealed from Plaintiffs its corporate relationships, (see Pls' Resp. at 25), yet this assertion is contradicted by allegations in the SAC indicating that the information is publicly available (SAC ¶¶ 19-24). Moreover, facts alleging fraudulent concealment must be plead with particularity, and Plaintiffs' general allegations that First American failed to disclose certain information do not meet this standard. Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006). Plaintiffs also contend that First American did not disclose its reconveyance fees until document signing (¶¶ 102, 103, 147-49), but the Court fails to see how disclosure on the date the claim accrued prevented Plaintiffs from asserting their claims within the year. Finally, Plaintiffs' allegations that First American falsely represented that "the statements it made in the HUD-1 settlement statements were true and accurate," (Pls' Resp. at 25), do not allege wrongful conduct over and above the conduct comprising Plaintiffs' original claims. (See ¶¶ 99, 122, 143, 158.) Because Plaintiffs fail to allege that Defendants actively engaged in wrongful conduct that prevented Plaintiffs from discovering the claims, they are not entitled to equitable estoppel.

Nor does the SAC allege sufficient facts to justify equitable tolling. Equitable tolling is appropriate where a plaintiff could not reasonably have known of the existence of his possible claims within the limitations period. Blaylock v. First Am. Title Ins. Co., 504 F. Supp. 2d 1091,

ORDER ON MOTION TO DISMISS — 6

1108 (W.D. Wash. 2007). While equitable tolling issues are "not generally amenable to resolution on Rule 12(b)(6) motion[,]" this Court finds that Plaintiffs' allegations offer no set of facts that would justify the application of equitable tolling. Supermail Cargo v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995).

Plaintiffs offer the blanket allegation that they "did not know and could not have learned the true facts underlying their claims until shortly before filing their complaint." (SAC ¶ 154.) Yet the reconveyance scheme allegations (count three) rely on information that Plaintiffs admit was available to them at the time of their closings. Plaintiffs had knowledge of the charged reconveyance fees (SAC ¶¶ 94, 117) and were specifically notified of separate charges for "reconveyance tracking services" (SAC ¶¶ 97, 141). The facts comprising the reconveyance fee claim come from the escrow contracts and HUD-1 statements that Plaintiffs signed. Because these documents gave Plaintiffs notice of this claim, they will be held to have known it. See Cornelius, No. C08-754 MJP at 12 (W.D. Wash. filed March 9, 2009) (citing Moll v. U.S. Life Title Ins. Co., 700 F.Supp. 1284, 1293 (S.D.N.Y. 1988)). Likewise, Plaintiffs admit that knowledge of the allegedly "marked-up" reconveyance tracking fees and First American's corporate relationships was publicly available. (¶¶ 19-25, 80.)

Because the reconveyance scheme claim in count three is time-barred, Defendants' motion to dismiss this claim must be granted.

2. Count Four: Referrals

The Court need not extend the statute of limitations analysis to the RESPA claims in count four because they fail as a matter of law. Plaintiffs allege that Defendants referred reconveyance business to SMS without disclosing the affiliation between FATIC and SMS, without informing Plaintiffs that they were not required to use SMS services, and without providing a written estimate of charges by SMS. (SAC ¶¶ 199-200.) Plaintiffs also allege that Defendants referred title insurance business to Talon Title without disclosing the affiliation between FATIC and Talon Title, without informing Plaintiffs that they were not required to use

ORDER ON MOTION TO DISMISS — 7

Talon Title services, and without providing a written estimate of charges by Talon Title. (SAC ¶¶ 210.) Plaintiffs assert that these allegations establish a claim under RESPA. See 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.14.

This Court recently evaluated and dismissed nearly identical allegations in Cornelius. No. C08-754 MJP at 10 (W.D. Wash. filed March 9, 2009). RESPA states that no person shall give or accept "any fee, kickback, or thing of value" in connection with a business referral for settlement services, and defines a thing of value as "any payment, advance, funds, loan, service, or other consideration. 12 U.S.C. §§ 2602(2) & 2607(a). As in Cornelius, Plaintiffs fail to allege that the referring party has received any payment or "thing of value" in exchange for the referrals.

The Court cannot assume that a party received something of value in exchange for a referral from another party simply because the parties are business affiliates. Plaintiffs miss this point in relying on the language of Regulation X and § 2607(c) for support. These sections state that an affiliated business relationship will not violate RESPA as long as the relationship is disclosed and customers are provided with a written estimate of charges. 12 U.S.C. § 2607(c)(4)(A); 24 C.F.R. § 3500.14(b)(1). But a closer reading reveals that these requirements are applicable only if the affiliates exchange something of value for the referral. This conclusion is not disputed by the Plaintiffs' own authority, Edwards v. First American Corp., 517 F. Supp. 2d 1199, 1205 (C.D. Cal. 2007). To the contrary, Edwards clearly states that a RESPA violation requires: "(1) a payment of a thing of value [] (2) made pursuant to an agreement to refer settlement business and (3) a referral []." Id. Because Plaintiffs have not alleged the first of these, they have failed to state a valid claim and count four must be dismissed.

3. Count Five:  Earnings Credits

In count five, Plaintiffs allege that Defendants received an illegal fee or kickback in violation of RESPA when they accepted earnings credits and other benefits from banking institutions in exchange for depositing pooled escrow funds. (SAC ¶¶ 217.) This Court has

ORDER ON MOTION TO DISMISS — 8

recently found that similarly situated plaintiffs had no standing to bring such a claim, and the same analysis is applicable here. See Cornelius, No. C08-754 MJP at 8-9 (W.D. Wash. filed March 9, 2009); Sypolt v. The Talon Group, No. C07-1892 MJP at 6 (W.D. Wash. filed Feb. 26, 2009).

A plaintiff has standing to sue when she has: (1) suffered an "injury in fact," (2) the injury is causally connected to the complained-of conduct; and (3) the injury can be redressed by a "favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An injury in fact is "an invasion of a legally protected interest which is concrete and particularized and actual or imminent." Id. at 560 (internal citations and quotation marks omitted). As in Cornelius and Sypolt, Plaintiffs have no standing to bring the earnings credits claim because they cannot establish an injury in fact.

The Ninth Circuit has described earnings credits as incentive payments to escrow companies that are "never the property of the escrow companies' customers." Wash. Legal Found. v. Legal Found. of Wash., 271 F.3d 835, 860 (9th Cir. 2001) (en banc). Plaintiffs would be unable to earn the credits individually because they arise solely from the relationship between the bank and the escrow company. Without a legally protected interest in the earnings credits, Plaintiffs lack standing to bring this claim.

As discussed in Cornelius, even if Plaintiffs were able to establish standing, their claim would fail because the deposit of pooled escrow funds with a particular bank does not constitute a referral of business incident to real estate settlement services as required by RESPA. See 12 U.S.C. § 2607; Cornelius, No. C08-754 MJP at 9 (W.D. Wash. filed March 9, 2009). Defendants' decision to deposit funds in a particular banking institution is not relevant to the escrow agent-client relationship. The earnings credits, or any other benefits that accrue to Defendants as a result of their relationship with their bankers, do not arise out of the referral of real estate settlement services and therefore cannot be the subject of a RESPA claim. The Court is persuaded that the "earnings credit" practice is a function of the relationship between the

Defendants (as depositors) and their banks, not between the Defendants (as escrow companies) and their clients. RESPA is not implicated by this practice and count five must be dismissed.

**III. UNJUST ENRICHMENT**

Plaintiffs seek "full disgorgement and restitution" of the damages they allege as a result of the "reconveyance schemes" and the "earnings credit schemes." (SAC ¶¶ 221-226.) Unjust enrichment is an equitable, quasi-contractual remedy that cannot be applied to a written contract. "A party to an express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same subject matter, in contravention of the express contract." McDonald v. Hayner, 43 Wn.App. 81, 84 (1996). Having determined that Plaintiffs have no standing the pursue their earnings credit allegations, the Court need only address the unjust enrichment claim concerning the "reconveyance schemes."

In Cornelius, this Court reviewed nearly identical allegations and determined that the parties' escrow contracts sufficiently covered the subject matter of the unjust enrichment claim, and the plaintiffs were barred from pursuing an equitable remedy. No. C08-754 MJP at 16 (W.D. Wash. filed March 9, 2009). The current facts require the same conclusion. As discussed above, Plaintiffs have plead a valid claim for breach of the escrow contracts with allegations that Defendants improperly charged reconveyance fees. The Court cannot allow the same allegations to simultaneously support a quasi-contractual claim for unjust enrichment. Count six must be dismissed.

**IV. FIDUCIARY AND AGENCY DUTY**

      1. <u>Counts Seven: Breach of Fiduciary Duty</u>

Plaintiffs allege that Defendants breached their fiduciary duties as escrow agents by improperly charging reconveyance fees and failing to pay earnings credit and other benefits received on deposited escrow funds. (SAC ¶ 229.) Having found that Plaintiffs do not have standing to pursue their claims related to the "earnings credit scheme," the Court need only

address the allegations related to the "reconveyance schemes."

In order to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a duty owed; (2) a breach of that duty; (3) injury; and (4) a proximate cause relationship between the breach and the injury. Micro Enhancement Int'l v. Coopers & Lybrand, Inc., 110 Wn.App. 412, 432 (2002). As escrow agents, Defendants have a fiduciary duty to their clients that is defined by the terms of their escrow instructions. National Bank of Washington v. Equity Investors, 81 Wn. 2d 886, 910 (1973) (en banc); Denaxas v. Standstone Court of Bellevue, LLC, 148 Wn.2d 654, 663 (2003) (en banc). Defendants deny any duty extending beyond the scope of their escrow instructions and argue that Plaintiffs have failed to allege any breach of those instructions. The Court disagrees.

Construing all allegations in Plaintiffs' favor, the escrow instructions can be read to obligate Defendants to perform any reconveyance processing themselves as part of the services covered by their escrow fees. See Section I above. In count seven, Plaintiffs allege that FATIC deviated from these instructions by charging additional reconveyance fees and charging reconveyance fees for services that were not actually rendered. (SAC ¶ 229.) As this Court recently found in Cornelius, Plaintiffs' fiduciary duty allegations concerning reconveyance fees and their allegations supporting the claim for breach of the escrow contracts amount to pleading in the alternative. C08-754 MJP at 17 (W.D. Wash. Filed March 9, 2009). On a motion to dismiss, the Court takes the reconveyance fee allegations as true and finds that Plaintiffs have satisfied the required elements for pleading breach of fiduciary duty. Defendants' motion to dismiss count seven will be denied.

2. Count Eight: Breach of Agency Duty

Because Defendants offer the same arguments for dismissal of the breach of agency duty claim, their motion on this count must also be denied. (See Mtn at 19.) Again, the Court acknowledges that an escrow agent's duty is limited to the substance of the escrow instructions. Equity Investors, 81 Wn. 2d at 910. To the extent that Plaintiffs allege that FATIC deviated

ORDER ON MOTION TO DISMISS — 11

from those instructions in their charging of reconveyance fees (SAC ¶ 233), the claim for breach of agency duty survives.

## V. CALIFORNIA UNFAIR BUSINESS PRACTICES ACT

In count nine, Plaintiffs allege that Defendants violated the California Unfair Business Practices Act (Bus. & Prof. Code §§ 17200, et seq.). (SAC ¶¶ 236-246.) This claim must be dismissed because Plaintiffs have not sufficiently plead that Defendants' alleged wrongful conduct and/or resulting injuries occurred in California. See Churchill Village, L.L.C. v. GE, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) ("section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California").

In their briefing, Plaintiffs attempt to show that they have plead a nexus to California with two allegations in the SAC: (1) "the illegal and deceptive acts alleged ... were designed and implemented in California..." (¶ 15); and (2) "the actions and underlying decisions of Defendants ... emanated from and occurred within" California (¶ 238). (Plfs' Resp. At 24.)[4] Yet the SAC also alleges that Plaintiffs are Washington residents who engaged in Washington real estate transactions with agents of Defendants' Washington operations, thereby identifying conduct and injury occurring in the state of Washington. (¶¶ 16-21.) In light of these specifics, Plaintiffs vague assertions that the deceptive acts and decisions "emanated from and occurred within" California do not "contain enough [factual allegations] to raise a right to relief above the speculative level" and therefore do not state a claim under California law that is plausible on its face. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

The recent California class certification cases presented in Plaintiffs' supplemental briefing (Dkt. No. 70) involve a California choice-of-law analysis that does not alter this Court's decision. See Parkinson v. Hyundai Motor America, SA CV 06-345 AHS (MLGx), 2008 U.S. Dist. LEXIS 101098 at *17-18, *46 (C. D. Cal. Dec. 12, 2008) (certifying nationwide class for

---

[4]Having dismissed the claims regarding Plaintiffs' earnings credit allegations, the Court will not consider any affiliated allegations in support of count nine. (See ¶¶ 10, 35, 65.)

claims under California's Unfair Competition Laws where the defendant had "a substantial presence in California, including in-state business practices that form the core of plaintiffs' allegations" and where "it is likely that more class members reside in California than any other state"); Mazza v. American Honda Motor Co., CV 07-7857-VBF(JTLx), 2008 U.S. Dist. LEXIS 102429, at *19-21 (C.D. Cal. Dec. 16, 2008). The SAC involves Washington-resident plaintiffs bringing a claim in a Washington court based on transactions involving Washington real estate and Defendants' Washington operations. Without factual allegations that conduct supporting their claim occurred in California, the SAC offers insufficient basis for applying the California statute and count nine must be dismissed.

## VI. WASHINGTON CONSUMER PROTECTION ACT

In count ten, Plaintiffs allege that Defendants violated the Washington Consumer Protection Act ("CPA") "by carrying out the [] Reconveyance Scheme[s] and the Earnings Credit Scheme." (¶ 250.) Having dismissed the "earnings credit scheme" claims, this Court need only consider whether Plaintiffs have stated a successful CPA claim with allegations concerning improper reconveyance fees.

To state a claim under the CPA, Plaintiffs must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that has a public interest impact; (4) that caused injury; (5) to Plaintiffs in their business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Defendants argue that the SAC fails to allege the first and third of these elements. (Mtn at 22-23.)

First, Plaintiffs have sufficiently plead that Defendants engaged in unfair or deceptive acts with allegations that Defendants charged additional reconveyance fees for services that should have been provided pursuant to the escrow contracts, and allegations that Defendants improperly charged reconveyance fees without performing any reconveyance services. (SAC ¶¶ 201-205.) Even if these fees were fully disclosed, (see mtn at 23), the allegation that they were improper and deceptive is sufficient to succeed on a motion to dismiss.

ORDER ON MOTION TO DISMISS — 13

Second, the Court finds that the alleged unfair and deceptive conduct has a public interest impact. Because the escrow agent-client relationships between Defendants and Plaintiffs are considered private relationships, the Court must consider the following four factors to determine whether the public has an interest in the subject matter of Plaintiffs' claim: (1) whether the acts were committed as part of defendant's business; (2) whether defendant's business advertised to the general public; (3) whether the plaintiffs were actively solicited by defendants; and (4) whether the parties occupied unequal bargaining positions. Hangman Ridge, 105 Wn.2d at 790-91; see also Cornelius, C08-754 MJP at 14 (W.D. Wash. filed March 9, 2009). "[N]ot one of these factors is dispositive, nor is it necessary that all be present." Id. at 791. The SAC alleges that the wrongful acts were committed as part of Defendants' business (¶ 253) and the form contracts signed by the parties indicate that Plaintiffs and Defendants occupied positions of unequal bargaining power (Dkt. Nos 48-2, 48-3 & 48-4). See Adler v. Fred Lind Manor, 153 Wn.2d 331, 347 (Wash. 2004). These allegations are sufficient to establish public interest impact and Defendants' motion to dismiss count ten must be denied.

## VII. JOINDER OF KATHERINE McFERRIN

The Court agrees that Katherine McFerrin is a necessary party to this action because she is a signatory to the Escrow Instructions signed by David McFerrin and was a party to the transactions on which Mr. McFerrin's claims are based. See Fed. R. Civ. P. 19(a)(2). Plaintiffs have indicated that Katherine McFerrin is willing to participate in this action, (Plfs' resp. at 30), and hereby grants leave to amend to add Mrs. McFerrin as a named Plaintiff.

**Conclusion**

Because Plaintiffs have succeeded in stating a valid claim, the Court DENIES Defendants' motion to dismiss count one for breach of the escrow contracts, counts seven and eight for breach of fiduciary and agency duty, and count ten for violation of the Washington Consumer Protection Act. The Court GRANTS Defendants' motion to dismiss count two for breach of the HUD-1 statements, counts three, four, and five for violations of the Real Estate

Settlement Procedures Act, count six for unjust enrichment, and count nine for violation of the California Unfair Business Practices Act, and these counts are hereby dismissed for failure to state a claim.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: March 23, 2009

Marsha J. Pechman
U.S. District Judge

ORDER ON MOTION TO DISMISS — 15